Mr. Hedera was born in Bari, Italy. He resided there until 1988, when he was 9 years old, and he entered the United States as a derivative of his father's asylum application. He subsequently obtained his green card. In 2000, Mr. Hedera was convicted of delivery of cocaine under the revised code of Washington. Subsequently, the Department of Homeland Security initiated removal proceedings. In DHS's notice to appear, Mr. Hedera is alleged to be a citizen of Ethiopia. Mr. Hedera denied this allegation. Furthermore, Mr. Hedera declined to designate a country of removal. The immigration judge designated Ethiopia. In so designating, he stated, I agree with Mr. Hedera that it is not likely Ethiopia would recognize him as being a citizen thereof. Mr. Hedera contends that the immigration judge's designation of Ethiopia violates the Immigration and Nationality Act. The statute sets forth a series of steps that the attorney ---- Kennedy, you could have had a question. May I just ask, interject a question? Sure. If we agree that the immigration judge erred in its determination about remanding to Ethiopia, does that eliminate ---- do we need to reach any of the other issues of withholding and the cap removal, or would that be just a remand back to the immigration judge? We would request that the Court remand to the immigration judge to properly designate. We do maintain, however, that the Court should still reach the other issues in Mr. Hedera's case, because the statute sets out a scheme whereby the Department of Homeland Security, after attempting to deport an alien to either the country he's designated or the country an immigration judge has designated and being unsuccessful at that, may deport an alien to a number of other countries. But wouldn't it be just advisory on our part? I guess that's what I was concerned about, because both of the withholding and the cap statutes ask to make a determination based on which country the alien is being deported to. So how could this Court reach those issues if that's the very issue that hasn't been correctly determined? Right. Again, Judge, we ---- it is our concern that if the case were remanded and the immigration judge were to properly designate, say, designate Italy, the country of Mr. Hedera's birth, that at a later date, the Department of Homeland Security, if they were unsuccessful in obtaining travel documents for Mr. Hedera to Italy, may attempt to remove him to perhaps Ethiopia. And for that reason, we do request that this Court reach the decisions of the immigration judge with respect to withholding of removal and relief under the Convention Against Torture. Why didn't you argue that the decision of the immigration judge was racially prejudiced? That is a very good question, Judge. We ---- I don't have a good answer for you, Judge. It's a very good question. If you ---- if he is deportable, if, where would you recommend that he be deported to? Well, we ---- we submit the immigration judge must follow the statute, and the statute provides clear guidance on which countries an immigration judge may designate. Just give me the name of the country. I think the proper designation in this case would have been Italy, which is the country of Mr. Hedera's birth and the country he resided at until he was admitted to the United States. And are you alleging that, or has it ---- has evidence been produced indicating that he has fear of torture in Italy, or any of the bases for withholding, or can? We're not seeking relief as to Italy, Judge. OIL contends that the evidence of record establishes that Mr. Hedera is a citizen of Ethiopia. And again, I would refer back to the statement of the immigration judge, in which he agrees with Mr. Hedera that it is not likely that Ethiopia would recognize him as being a citizen thereof. With respect to ---- Have you talked with the immigration service about working out a deal that would send your client to Italy? We also were referred to mediation, Judge, and again, the services were excellent, and we were unable to reach an agreement. Well, you found that he was not susceptible to any suggestions. Pardon? The immigration judge was not susceptible to any suggestions. I'm afraid I don't understand, Judge. That's all right. It's a ---- So that's what this is all about, wants to go to Italy. In part, this is about whether the judge properly designated Ethiopia as the country of removal. In addition ---- He's never been to Ethiopia, has he? Pardon? He's never gone to ---- lived in Ethiopia. That's correct. He wasn't born in Ethiopia. He's never been to Ethiopia. He's merely described as being Ethiopian on an application his parents filled out for him several years ago, and that evidence the immigration judge finds is insufficient to deem him a citizen of Ethiopia. Yet the judge goes on then to designate Ethiopia as his country of removal. So why wouldn't the government agree that he had to be deported to Italy? I'm afraid you'll have to ask the government that, Judge. All right. In addition, Mr. Hedera submits that this court has jurisdiction to review the decisions of the immigration judge with respect to withholding of removal and relief under the Convention Against Torture. You know, you have a habit that I have of dropping your voice towards the end of the sentence. Sorry. It's all right. Mr. Hedera also submits that this court has jurisdiction to review the decisions of the immigration judge with respect to withholding of removal and Mr. Hedera's application for relief under the Convention Against Torture. And this court's recent decisions in Efridi v. Gonzales, Morales v. Gonzales, confirms the court's jurisdiction over the particularly serious crime determination as well as over the merits of those applications for relief. I think I'll stop now and return after all. All right. Good morning. May it please the Court, Eric Marsteller for the Attorney General. In 2000, Mr. Hedera was convicted of delivery of cocaine in a protected zone and sentenced to 45 months in jail and one year of probation. Why did he say Ethiopia? The immigration judge said Ethiopia because applying the four-step process articulated in the statute discussed in JAMA, the first step is the country that the alien designates if an alien does designate a country. In this case, Mr. Hedera did not designate a country. Keep your voice up, too, a little, will you? In this case, Mr. Hedera did not designate a country. So that was the first step, but it didn't apply. The second step is that the immigration judge will designate removal to the country of the alien's nationality or citizenship. And the immigration judge, the immigration — Why did he do that? Sorry? Why did he do that? Well, there was a question about Mr. Hedera's citizenship. He's not an Italian citizen. And there was some indicia in the record — He was born in Italy, right? But Italy doesn't recognize birth in Italy as making him a citizen. That's correct, Your Honor. So there was some indicia in the record that he was a citizen of Ethiopia, such as the documents submitted by his parents in order to get him legal status in the United States. So the immigration judge, based on those indicia, stated that he would order removal for whatever it was worth. But the immigration judge said, notwithstanding these statements regarding the evidence, I agree with Respondent that it is not likely that Ethiopia would recognize him as being a citizen thereof. And your opposing counsel argues, well, the IJ made a finding that it's unlikely that Ethiopia would recognize him as being a citizen. I mean, that sounds pretty sensible based on what the IJ, in fact, said. Why doesn't that resolve the issue? Because whether the immigration judge believes an individual is a citizen is not a decision for the immigration judge. It's also not a decision for this Court. The only body that can determine whether Mr. Hedera is a citizen of Ethiopia is the government of Ethiopia. So at this point, the immigration judge can't be certain that he will be accepted, and none of us can be certain until requests are made with the Ethiopian government to determine if they consider Mr. Hedera an Ethiopian citizen. And those steps will be taken once there's a final order of removal. So it was that second step where the analysis stopped in this case because the immigration judge found some evidence that he may be a citizen. What do you do with someone like that? Ethiopia probably doesn't want him. You don't know what Italy's going to do. Well, what would happen, Your Honor? If the government would first, if there was a final order of removal, first off, Mr. Hedera could self-deport. He could, if he could find any country that would accept him, including Italy, he could go there without the government's intervention, and that would end the matter. He could go to the Italian consulate tomorrow and get travel documents, show his birth certificate and attempt to get travel documents to go to Italy. So that's his burden if that's what he chooses to do. In a case like this, if Ethiopian government says it will not accept Mr. Hedera and they find that he's not a citizen, then the Department of Homeland Security will go to the third and fourth steps of the steps for determining the country of removal. The third step would likely be Italy, because it's the country of his birth and some other factors. And the fourth step is kind of a catch-all, where if no country in the first three steps can be found, DHS can remove an alien to any country that is willing to accept him. Has an inquiry been made to Ethiopia as to whether Mr. Hedera is a citizen? No, it has not. My understanding from DHS is that foreign governments generally won't determine whether they will accept an individual until after there's a final order of removal, so they don't bother trying to make that inquiry at that time. They wait until, usually the practice as I understand it is once there's a final order, DHS will give the individual 30 days to deport himself. And after that time, they will send him a letter saying that he needs to be removed and they will try to, at that point, try to determine a country. In this case, because there is also some indicia of his Italian birth, DHS would likely, the practice in a case like this would be to also contact the Italian consulate or embassy to determine if they would be willing to accept Mr. Hedera. So are you saying then that in doing this analysis, if there is any evidence, no matter how weak and even if the IJ disbelieves it, that it becomes the country determined to be the country of citizenship and a final order of removal to that country, regardless of the strength of the evidence, regardless of the IJ's determination? That's correct, Your Honor, but let me add to that. Are there regulations or is there any case law that would support that? It doesn't seem to necessarily track the language of 1231b2. Let me explain the process a little more thoroughly. The immigration judge also has the authority to designate alternative countries of removal. So the immigration judge can designate, in this case, he could designate Ethiopia or in the alternative, Italy. In this case, the immigration judge didn't do that, but he wasn't required to do that. It's a discretionary action. But more importantly, the designation is more of an administrative tool than a legal right. It is just a way to advise the immigrant of the potential countries of removal so he can apply for any necessary relief or protection. I'd also point out that before Mr. Hedera, if Ethiopia doesn't accept him and the United States finds another country that's willing to accept him, Mr. Hedera will have the opportunity to request any relief or protection from removal to that country if he fears persecution there. So it's not like he will be sent to some country where he may be harmed without his ability to at least seek protection from that relief. I don't have the specific site, Your Honor, for the reg regarding the alternate removal countries. What it is in the regulations, it says more than one country can be designated.  What if no country would accept him? Sorry? Then you get into some more complex issues, which at this point are not before the court. There are some... We like to know. We're dealing with someone's life. I understand that. So we like to know. What's going to happen to this person? He's lived here for how many years? I believe he's lived here since the mid-90s, Your Honor. Well, first off, DHS would take every effort to find a country under the fourth step to accept him. How do they do that? I believe they contact the embassies of... I'm not sure if DHS or the State Department, but they contact them. And they say, well, why should we take him if you don't want him? The diplomacy can create some unexpected results, Your Honor. In other words, you pay him? Is that it? I don't know the exact process, Your Honor. I just know that through diplomatic measures, we will attempt to find a country that is willing to accept the aliens. And then my question is, what if no country would accept him? I hear your question, Your Honor. If no country would accept him, I'm not exactly sure what would happen. He would remain in the United States, and I imagine DHS would continue to keep trying to find a country that would accept him. I'm not exactly sure on the procedures for that, and I can give you some more information later on, Your Honor. But I don't know the precise procedures of no country. Where do we keep him in prison until that happens? Again, I don't know, Your Honor. There would be some potential issues with Zadvydas, which says detention can only go on for so long. Zadvydas, which was a Supreme Court case. So there would be some issues. I don't know the precise procedures if that were to happen. I'm almost tempted to ask you, we send him to Guantanamo? I can't say, Your Honor, but I would doubt it. I'd quickly like to get to the jurisdictional issue. We believe the Court does not have jurisdiction to review Mr. Hedera's withholding, removal, and CAT claims. There's two questions that need to be asked. Does the jurisdictional bar at 8 U.S.C. 1252 A2C apply here? And secondly, if it does, what is its scope? We argue that it does apply here. With regards to the withholding claim, Mr. Hedera's withholding claim was denied for two reasons, two alternative reasons. The first was that he, the immigration judge, found that he had been convicted of a particularly serious crime. Because the crime was a sentence of less than five years, it necessarily was a discretionary determination to determine that it was a particularly serious crime. And the alternative, it was denied on the merits. And this is where the alternative merits for withholding and CAT kind of intermesh here. And the Court lacks jurisdiction because, in both cases, the immigration judge found that Mr. Hedera had failed to establish that it was more likely than not that he would be tortured or persecuted if he were to be removed to Ethiopia. In this case, the Court lacks jurisdiction. Well, where was his mother born? His mother was born in Ethiopia. Uh-huh. And his father was born in Ethiopia. So if they, I mean, the strange decision in Morales seems to indicate that if the IJ denied the CAT claim on the merits, then we do have jurisdiction. We are not subject to the jurisdiction stripping provisions. In the paragraph, I see my time is up. Would it be appropriate to answer? We're enjoying it. In the paragraph preceding the one you just cited, Your Honor, in Morales, they also cite this Court's decision in Unuaka'ulu and its decisions in Ruiz-Morales. In Unuaka'ulu, the Court said that it lacked jurisdiction for two reasons. One was that the alien was not ordered removed on the charge of removability and that his CAT claim was not denied on the merits, not just the one, and they required both. In this case, Mr. Hedera was ordered removed on the charge of his aggravated felony. So it is different than Morales, and it is different than Unuaka'ulu, and it is more like Ruiz-Morales, which in Morales, the Court stated that Ruiz-Morales was still good law, and so we read that to mean that if an alien was ordered removed on the charge of an aggravated felony, the Court lacks jurisdiction. Granted, Ruiz-Morales was before the REAL ID Act. The REAL ID Act has given this Court jurisdiction over questions of law and constitutional claims. However, whether Mr. Hedera established that it was more likely than not that he was eligible for CAT protection is a question that's reviewed for substantial evidence, which is the evidentiary standard, which the Supreme Court and every other court has said is a factual finding. So, therefore, we believe this case is more like Ruiz-Morales and less like Morales based on the distinction articulated in Unuaka'ulu. Thank you. Thank you, Your Honors. Well, we still don't know any more than we did when you started. I hope you know a little bit more. Well, I'd like to know what's going to happen to him. Well. Can't you call up the State Department? As I mentioned, DHS and the State Department don't make those inquiries until after there's a final order of removal. Foreign countries aren't willing to, from what I understand, they're not generally willing to. I mean, you know, since Italy went over and bombed Ethiopia in 1937 or 38, maybe they have an affinity for people from Ethiopia. And perhaps. Maybe that's in some peace treaty. I'm not sure. And I also would note again that Mr. I'm pulling your leg, you know. I appreciate that. Well, I also just want to point out that Mr. Hedera can always go to the Italian consulate and see if there's any reason they'll let him relocate there. What is the record of Ethiopia towards Mormons? The record doesn't include a lot of information specifically regarding Mormons. It does state that the State Department report indicates that there are Mormon missionaries in the country. And as far as I could tell, there was no indication that they've suffered adverse effects from being there. Well, we have a history here of not missionaries, but we have a history in this case documented that an African-American, an African, born in Ethiopia, was persecuted. His family was persecuted because they were Mormons. I don't recall seeing that in the record, Your Honor. However, even assuming that's there, we would again state that the court lacks jurisdiction over that claim. And secondly, there's also record evidence indicating that, as I said, the missionaries have not been harmed. So I don't have a direct response to your question, Your Honor. But I do know that the record doesn't show that it... We've had missionaries go to those places since the founding of this nation. And not too many of them have survived. I've been reading this whole history. And so the missionaries over there, they lead a very precarious existence. Even if that's the case, Your Honor, a petitioner would have had to have shown that it is more likely than not. And they're having... Wars are going on over there. People are running their atria. There's starvation and all kinds of mistreatment of people there. And it's... It's a pretty dreadful place. I understand that Ethiopia is not... It's human rights record is not the best. But at the same time, to establish CAT eligibility, Mr. Hedera, assuming the court had jurisdiction, would have had to establish that it's more likely than not that he would be tortured by or with the acquiescence of the government. So even if the court were to reach the issue, Mr. Hedera, who has never learned about Ethiopian politics, never professed to have any real interest in Ethiopia, has failed to establish that it's more likely than not that he will be tortured or persecuted. Does he speak the language? It's unlikely, but that is generally not a major consideration in removal proceedings. Thank you, Your Honors. Thank you. To clarify, Mr. Hedera has lived in the United States since 1988, when he was 9 years old. Oil seems to suggest that the process the immigration judge goes through in designating a country of removal is an exercise in futility, because apparently, according to Oil, at the end of the day, the Department of Homeland Security is going to do what it wants to do. What is your suggestion for solving this dilemma? My suggestion, Judge, is that this court remand Mr. Hedera's case to the immigration judge to properly designate a country of removal, and our preference would be also that the court reach the issues of withholding of removal and CAT. I just missed a sentence. Your what would be? Our preference would be also that this court reach the questions raised by Mr. Hedera with respect to his withholding of removal and CAT claim applications. With respect to the withholding of removal application, one of the reasons the immigration faced his decision denying that application on was his determination that Mr. Hedera had been convicted of a particularly serious crime. We submit that the immigration judge, in reaching that conclusion, made a generalized analysis, not a case-by-case analysis, as he is required to do. under F. Reedy v. Gonzalez. And because he applied the wrong legal standard, it's our position that this court can review his particularly serious crime determination or decision. We believe that determination or decision of the immigration judge was faulty. Finally, the record is replete with country conditions documentation, both on the treatment of religious minorities in Ethiopia, as well as those the Ethiopian government perceives to hold an opposition political view. In this case, Mr. Hedera comes from an extremely politically active family. Several of his uncles and his father were instrumental in the formation of the Ethiopian Democratic Union. And it's Mr. Hedera's concern that because of his family's political involvement, their political opinions will be imputed to him, and that will serve as the basis for the Ethiopian government to cause him harm. Anybody else in the family besides the father and mother and the applicant? Mr. Hedera has siblings who are also in the United States. How many? He has two sisters. Thank you. Where is he now? He's living and working in the Seattle area. Okay. Thank you. What kind of jobs? What's his work? He recently completed a course in HVAC, heating, ventilation, air conditioning systems. Thank you. All right. All right. That is submitted.
judges: Pregerson, Ferguson, Ikuta